UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONICA LOVO,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>INVESTIS INC.,<br><br>　　　　　　Defendant. | Docket No.<br><br>**COMPLAINT** |

　　　　Plaintiff MONICA LOVO as and for her Complaint, all upon information and belief, respectfully alleges as follows:

**JURISDICTION AND VENUE**

　　　　1.　　This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

　　　　2.　　Venue is proper under 28 U.S.C. §1391(b) because the events underlying this action occurred within the Southern District of New York and because the Defendants have a principal place of business in this District.

**IDENTITY OF THE PARTIES**

　　　　3.　　Plaintiff Monica Lovo ("Lovo") was employed by Investis Inc. ("Investis") from in or around April 2016 until she was unlawfully terminated on February 16, 2022, because of her gender and domestic partnership with Don Scales, the former-Chief Executive Officer of Investis.

　　　　4.　　Upon information and belief, at all relevant times Investis was and is a business corporation organized under the laws of the State of Delaware and was and is authorized to conduct business in the County, City and State of New York, where Lovo was employed.

15

5. Investis is a digital communications company that advertises itself as specializing in corporate communications, marketing, talent acquisition and employee engagement, with its North American headquarters in New York County.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

6. From in or around April 2016 to February 16, 2022, Lovo was employed by Investis as Office Manager and later as Human Resources Director, positions that she held at all relevant times herein.

7. In her role, Lovo was responsible for coordinating the office management and human resources operations of the entire New York office of Investis with Professional Employer Organization TriNet.

8. Lovo reported into the global Head of Human Resources, at different times Rachel Collier and Nicola Hart, and later indirectly from the Chief Operating Officer, the Chief Financial Officer and managing directors within Investis.

9. At all relevant times, Lovo was fully qualified for her position as confirmed by, among other things, her more than a decade-long careers in office management and later as an executive assistant and her positive performance in all roles held during her time with Investis, which included leading two successful office relocations for Investis, one in New York and another in Phoenix, Arizona, and onboarding over 100 employees for Investis after acquisitions of other companies.

10. Lovo executed her duties successful and to the satisfaction of Investis, as confirmed by her performance, and the positive reviews she received during her employment.

11. Until September 5, 2021, Don Scales ("Scales") was Investis' Chief Executive Officer.

12. Lovo and Scales were in a domestic partnership since in or around 2012.

15

13. Investis knew Lovo and Scales were in a domestic partnership throughout Lovo and Scales' employment with the Company, including former-Chief Operating Officer David Johnson, Chief Digital Officer David Corchado and former-President of North American Operations Marlin Jackson.

14. In fact, Lovo regularly accompanied Scales on business trips to London where they stayed together in an apartment leased by Investis, and their apartment in New York was also leased by Investis.

15. Additionally, for example, Corchado was known to refer to Lovo when it came to knowledge of personal, intimate information about Scales, such as asking Lovo what shoe size Scales wore.

16. Further, Investis acquired iCrossing, a privately held company owned in part by Jeffrey Herzog, who also acknowledged on multiple occasions that Investis knew about Scales' domestic partnership with Lovo.

17. No one in Senior Leadership at Investis objected to their domestic partnership while Scales was CEO, and it was not against Investis corporate policy for Lovo and Scales to be in a committed relationship.

18. On September 5, 2021, Scales died suddenly and unexpectedly in the New York apartment he shared with Lovo.

19. When Corchado first spoke with Lovo about Scales' death, he asked how she could have not noticed that Scales was "missing from her bed," which is a comment Corchado could only have made with knowledge that Lovo and Scales lived together in a committed domestic partnership.

20. Soon after Scales' death, everyone in Senior Leadership at Investis turned on Lovo and treated her less well for her domestic partnership with Scales.

21. For example, Investis CFO Claire Price chided to Lovo "well, looks like you're going to be a wealthy woman" during a discussion about Scales' death, which was a hurtful and degrading comment clearly meant to hurt Lovo.

22. At the reception that followed Scales' funeral service in New York, the members of Investis leadership team ignored Lovo, even though Lovo had organized the reception.

23. However, at one point during the reception, Price told Lovo "I hope you know you do not have a future here [at Investis] anymore."

24. Later, Corchado called members of Scales and Lovo's immediate friends and harassed them to determine whether Scales would regard Lovo as his heir, despite knowing Scales and Lovo had been in a domestic partnership for nearly ten years, which alarmed Lovo and degraded her in front of people she loved.

25. Soon thereafter, Price invited Lovo to dinner, where she again told Lovo that she "did not have a future at Investis anymore" and that Lovo should instead "make a life in Florida," where Scales and Lovo had also lived.

26. Within weeks of Scales' passing and soon after Price told Lovo she "did not have a future at Investis," Price instructed Lovo to externally post a "Vice President of Human Resources" role to be filled immediately and did not consider Lovo for that role despite her years of service to Investis in a similar capacity.

27. In the meantime, on December 1, 2021, Price hired an interim Vice President of Human Resources, Rose Zory, on an independent-contractor basis.

28. On her first day with Investis, Zory confirmed that she was hired to assume Lovo's job functions and instructed Lovo to teach her the operational functions of Lovo's position.

29. When Zory and Lovo had lunch together on one of her first days with Investis, Lovo told Zory that she was eager to work with her at Investis and report into her, but Zory told Lovo that Lovo "had no friends at the company anymore" and that the company was most likely planning Lovo's termination.

30. On February 16, 2022, Zory informed Lovo that Investis had terminated her employment.

31. During the termination meeting, Zory told Lovo that "her role had been eliminated" and confirmed that at least part of the reason was that Senior Leadership did not like that she was in a domestic partnership with Scales, reiterating that her domestic partnership, and the identity of her domestic partner, played a significant role in her termination.

32. In terminating Lovo due to the end of her domestic partnership with Scales after his untimely death, Investis discriminated against Lovo for the change in her marital status and the identity of her domestic partner.

33. Even Investis' stated reason for Lovo's termination, that "her role had been eliminated," was a sham.

34. Investis simply gave the majority, if not all, of Lovo's responsibilities to Zory, who had been hired as soon as Investis senior leadership could target Lovo for being in a domestic partnership with Scales.

35. To the extent that Zory was intended to supervise Lovo's role in a more elevated role, upon information and belief Investis also hired a new HR professional named Patrick Callahan to replace any remaining responsibilities of Lovo's role, meaning her role had not been eliminated

at all.

36. As a result of Defendants' discriminatory conduct, Lovo has suffered the adverse effects of discrimination, the quality of her life has been irreparably damaged and her self-esteem, self-respect and well-being have been irreversibly harmed because she has been subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Lovo in the future, including but not limited to the fact that Lovo also lost her apartment in New York and was forced to leave her family and friends to move out of state while she searches for new employment.

37. Here, Investis' conduct towards Lovo shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lovo's rights under the New York City Human Rights Law, or that its unlawful actions against Lovo were so reckless as to amount to a disregard of Lovo's rights, so that in addition to all the damages inflicted upon Lovo and in addition to all the measure of relief to which Lovo may be properly entitled herein, Investis should also be required to pay punitive damages as punishment for its discriminatory and retaliatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST INVESTIS
### NYCHRL: Marital Status Discrimination

38. Lovo repeats and realleges all the paragraphs herein above as if fully stated below.

39. The acts which constitute and form this cause of action were perpetuated upon Lovo while she was in the course of her employment with Investis and while she was protected under the New York City Human Rights Law because of her marital status.

40. At all relevant times herein, Lovo was fully qualified for her position and performed her duties in that position in a satisfactory fashion and was in position to continue doing so.

41. The circumstances surrounding Defendants' conduct towards Lovo, including the fact that they told her that her role was being eliminated at least in part because of her domestic partnership with Scales, gives rise to a very real inference that the actual basis for Defendants' actions towards Lovo was marital status discrimination.

42. The facts contained herein constitute unlawful discrimination against Lovo by Investis, based on Lovo's marital status, in violation of Chapter 1, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (the "New York City Human Rights Law"), which inter alia, states that:

> It shall be unlawful discriminatory practice… [f]or an employer or an employee or agent thereof, because of the actual or perceived …marital status…of any person, to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

43. As a proximate result of Investis' conduct, Lovo has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Lovo believes Investis' conduct, complained of herein, has and will continue to have a negative effect upon her.

44. Here, Investis' conduct towards Lovo shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lovo's rights under the New York City Human Rights Law, or that its unlawful actions against Lovo were so reckless as to amount to a disregard of Lovo's rights, so that in addition to all the damages inflicted upon Lovo and in addition to all the measures of relief to which Lovo may be properly entitled herein, Investis should additionally be required to pay punitive damages as punishment for its discriminatory conduct and in order to deter Investis and others similarly situated from engaging in such conduct in the future.

45. Lovo, therefore, seeks compensatory damages in this Cause of Action, including, among other things, the emotional harm inflicted upon her, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

**WHEREFORE,** Plaintiff Monica Lovo demands judgment against Defendants on the First Cause of Action for compensatory damages and punitive damages, plus costs, pre-judgment interest and attorney's fees as permitted under the law; and for such relief as this Court deems just and proper.

Dated: New York, New York
January 13, 2023

KOVEL LAW PLLC
*Attorneys for Plaintiff*

 /s/ Daniel H. Kovel
DANIEL H. KOVEL
14 East 96th Street, #3
New York, New York 10128
P: (646) 397-1729